The next case is number 21-1922, Billy and Argelio Cante-Lopez v. Merrick B. Garland. At this time, would Attorney Olin please come to the podium and introduce himself on the record to begin? Good morning, Your Honors. Randy Olin for Mr. Cante. I'd ask to reserve two minutes, please. If you could just adjust your microphone, sir. Certainly. There you go. Better, Judge? Yeah. Thank you. Two minutes, you said? Thank you. The immigration judge denied Mr. Cante's application for withholding of removal on the grounds that he did not establish a nexus between the harm that he feared and his membership, the protected ground, his membership in a particular social group of the Cante family. She did this despite the fact that six members of the family, two were murdered, another one was kidnapped, another one was run over by Merrick 18 gang members. Before we get into the merits of that contention, which I understand, wasn't there a separate finding that the level of violence didn't rise to the level of persecution? Past persecution. Yeah. She did find that, Judge. And unfortunately, I'm hoping to, in fact, in my reply brief and in my brief-in-chief, I confine myself, not in the brief-in-chief, I tried to raise past persecution there. I am constrained to say that in the proceedings below, for whatever reason, these issues were in no way raised. So what do we do with that? I mean, how can you win that? I don't see any way. Oh, on past persecution? We're not even going forward on asylum at this point, Judge. We're going forward on the issue of withholding. Yeah, but if you can't show past persecution in a way that would satisfy asylum, how could you show it for? We're not proceeding on a past persecution claim. We're saying that it's more likely than not. His fear of future harm, it's more likely than not. Aren't both arguments, like, so intertwined, you can't prevail on one, you don't prevail on the other? Not at all. Not at all. In fact, they're completely distinct in the sense that if you don't go forward on past persecution or if you can't prove past persecution, you still have the option of showing that you have a, it's more likely than not that you will be persecuted in the future. So they're two completely different things. And do we have a ruling below on the future persecution? We did, but the ruling is flawed, Your Honor, and that's what I'd like to discuss with respect to what the I.J. did. It's very, very important that we understand the error that the I.J. made. But I'm here just focused on the future persecution, not the nexus. The only, the only, the I.J.'s decision on denying the withholding claim is based entirely on nexus, completely on nexus, and that is fatally flawed by the error that the I.J. made. If I can just address that quickly because it's critical to the, to the analysis. Counsel, I think it's a little less clear. The I.J. said I'm denying withholding of removal because he was not subject to past persecution and he has not established past or future persecution based on a statutory protected ground, and then goes on to say he was threatened if he did not join the gang for that reason. And you say that there was an error of fact, I believe, by the immigration judge. Is that your basic argument? Well, I believe it's an error of, it is an error of fact, I suppose, but it's also an error of law in my view. And also, and also, Your Honor, the judge's decision on withholding is comprised in one paragraph. There are six substantive sentences, and every one of those sentences refers to the corroborative documentation that was provided by his family members. There's only one reference in the I.J.'s decision with respect to withholding in the Nexus claim that even acknowledges what the testimony that she found to be credible with respect to the persecution. In that sentence... Mr. Olin, she found that what he described in his testimony was credible, but also found that there was an inconsistency between his testimony and his application, where he did not mention the events that are the thrust of your argument. And that he could have provided corroborative material easily, and he failed to do so. So we can't just take this as he was credible. Your Honor, he did provide corroborative evidence, and that's part of what the immigration judge got wrong here. She looked, she nitpicked, with all respect to the judge, she nitpicked those affidavits and that corroborative evidence instead of acknowledging for what it didn't do, in her view, it didn't name Mr. Conte specifically. My goodness, that's not a requirement that the gang members have to say, I'm going to persecute you, I'm going to murder you. They don't have to do that. They said they were going to kill one of his father's family members, another family member. What the IJ didn't do with respect to that corroborative evidence is acknowledge what it did do. It absolutely corroborated everything that Mr. Conte testified to in various ways, in his testimony in court, in his testimony to the asylum officer, in his 589 asylum application. She should have looked at that and said, this is wonderful corroborative evidence. I really would like to address, if I may, the mistake that's critical, that she made that's critical to her decision. Thank you. And that is. Can I just, before, I know we're going to let you get there, and I know your time's running short, so we'll make sure you have time to make this point. But I just want to make sure I understand how you're understanding the case. With respect to the future persecution claim, as opposed to the past persecution claim, as I understand your contention, it's that the IJ never made a finding on that score independent of the Nexus finding. I believe that's correct. Okay. Yes. And then what happened in the BIA, BIA just says affirmed, essentially. That's correct. Affirmance without opinion. Did you argue to the BIA that you could show future persecution? I did not represent him below. Was it argued to the BIA that future persecution could be shown? Oh, the whole argument was on the Nexus requirement. That's not my question. No, no, but in support of the Nexus requirement, in support of future persecution. I mean, they're very seriously intertwined. Well, one argument is an argument showing that there's a Nexus. And the other is an argument to the BIA that there was a basis in the record for showing that the type of harm that was feared in the future was a type of harm that would rise to the level of persecution. Was that argument made to the BIA? I'd have to refer to the brief, which was brief, to say the least, off the top of my head. Do we have that brief in our record, in the appendix or not? It's in the administrative record, yeah. Let me ask you something else. Independently of this claim you're arguing, the IJ made a finding that because your client failed to address certain matters pertaining to his criminal case, she could have an adverse inference. And she said the asylum application is denied in the exercise of her discretion based on that. So doesn't that alternately do away with all your arguments? Not for withholding. It did away with the argument for asylum. And that's why we didn't raise it, because it just wasn't raised to below. I can't get around the fact that it was, I believe, way above. Jurisdictionally, you would have had to have raised that future persecution argument to the BIA for us to now be able to entertain it, right? Well, I think the future persecution is entirely dependent upon the judge's error on the Nexus claim. You can't get to future persecution if you're deciding the case on the basis of Nexus. And again, I would have to You have the burden of making a case for withholding, a component of which is not just Nexus. A component of which is that the nature of the harm feared Right. Rises the level of persecution. My question is I believe it was raised. Yes, in the sense that Do you have a position, if we look at the brief and we decide that wasn't raised to the BIA, do you agree then that we don't have jurisdiction to consider it? I wouldn't agree, Judge, because I think that the Nexus is inexorably intertwined with the future persecution claim. You have just a few minutes, but why don't you explain the part that you wanted to tell us? The immigration judge said, in the only acknowledgement of Mr. Conte's testimony in various forms about the threats to him, the immigration judge said, the court acknowledges the respondent's testimony on cross-examination, that someone had to pay money or else someone in the family would be killed. And she puts a footnote in there that says, essentially, I don't have a Well, it says exactly, I don't have a transcript. I'm kind of working off memory here. And I'm paraphrasing. I think that's a very telling footnote that she put in there, because she got the She was flat wrong in what that part of the testimony said. She said, however, the testimony was in response to a question about when he was threatened to join a gang and was not tied to the extortion, threats, and murder of his extended family. That is completely wrong, Your Honor, because the first question that the DHS attorney put to Mr. Conte on this issue was, when they called you to make the threats, did they make specific reference to your father or to your uncles? Yes. What did they say? They said they had to pay money, because if not, the next one to be killed is going to be someone from the family. That testimony doesn't have anything to do with being conscripted into the gang. It has everything to do with the extortion threats to his father, uncles, other family members, which said that the next one, the next part, they're going to kill another member of the Conte family. He's the only male remaining in the Conte immediate family. He has clearly understood himself to be next in line. Is he supposed to wait around and find out if that's right or wrong? Thank you. Further questions? Just one final thing. At the end of the opinion, the judge notes that several other family members have sought asylum, but none of these applications have been granted. Does that weigh in any way in favor or against your client? I don't see why it would. I mean, there's someone else's claim. I don't know what exact claims were put forward there. I don't know how the cases were presented. No, that shouldn't matter to his claim. Thank you. Thank you. Thank you. At this time, would Attorney Pratt please come to the podium and introduce herself on the record to begin? Good morning, Your Honors. May it please the Court, Charisse Pratt for the respondent, Merrick Garland. The sole issue in this case is about nexus. Substantial evidence supports the agency's determination that the petitioner did not establish that his... Before you get to the nexus, can you just address the jurisdictional question I was wondering about? Was the future persecution issue raised to the BIA? No. And if you look on page 9 of the record, 9 to 10, that's the brief that he raised before the Board. And so what's the significance of the fact that no future persecution issue was raised to the BIA when I think it is correct, at least as I read the IJ's decision, that the was in effect a nexus ruling. So that wasn't the only thing. The IJ said he never presented any evidence of how the threats and murders impacted him. That's the past persecution. With respect to the future persecution claim, which is what your opponent is saying, grounds the withholding claim. My read of the IJ's decision is that's rejected solely because of nexus. There's no independent finding that is showing a future persecution hasn't been made out. Correct. Okay. Yet, you're saying in the briefing to the BIA, the petitioner did not make the argument that there was support in the record for finding future persecution. No, if you look on page 9 to 10 of the record. So what is the significance of that jurisdictionally for us? Because in order to make out the claim of withholding, you would have to show future persecution. But he's challenging an IJ ruling that denied it solely on grounds of nexus. He then appeals that to the BIA and challenges the nexus ruling but doesn't mention future persecution. He waived that. So what does that mean for what we can do? Clearly, the nexus issue is before us. And if we agreed that there was a problem with the nexus analysis, does that mean we can grant the petition and vacate the order of removal and have the IJ now address the future persecution issue? Or does the fact that the petitioner didn't raise future persecution to the IJ preclude us from taking that course? Well, we would argue because he did not raise it, it's waived. So the only issue before you would be nexus, not future persecution. Do we treat it that way when, I mean, do we have authority that would help me figure that out? Because it's sort of an odd situation where the IJ only relied on nexus. A challenge was brought to the BIA based on nexus. The BIA doesn't issue an opinion, it just affirms. So it's affirming an order that, at least from the arguments made to the BIA, if they're sound, is wrong. And yet, there's a gap because neither the IJ nor the petitioner appears to have addressed what the record says about future persecution. Well, I don't know. The reason I'm asking is because if there is a jurisdictional problem, then there's no reason for us to get into the merits of the nexus issue. Obviously, today we'll talk about the merits of the nexus issue, but it would be helpful for me to understand what the way to think about this question is. Well, he appears to have waived everything but nexus. And so, if he has, but you're saying that there was no finding on future persecution? Correct. And then he's saying to the BIA, the only ground that's being given, denying my withholding claim, is a legally incorrect one, which that was raised to the BIA. BIA seemed to disagree with that. But at the same time, there was no affirmative argument made for evidence of future persecution pressed to the BIA itself. But the BIA then doesn't explain why it ruled as it did. So, on page 47 of the immigration judge's opinion, the immigration judge says that she incorporates the whole analysis regarding nexus. Only addresses past persecution. And with respect to future persecution, doesn't address the merits of what the nature of the future harm will be. It just addresses the nexus, as far as I can tell. But it does say, for the reasons explained above, the court finds that the respondent has also failed to establish a well-founded fear of future persecution on account of a protected ground. On account of a protected ground. Yeah. That's the nexus point. But she says for the reasons explained above. But when you look above, there's nothing other than nexus to explain why future persecution would fail. Counsel, you seem to be making slightly inconsistent arguments about what the IJ found. I take it from what you said most recently. You say we can't necessarily read the IJ opinion as not reaching the future persecution ground independent of nexus because of the reference to the fact that the past persecution threats were, in many ways, even greater than any notion of future threats. And so implicit in the IJ's ruling is a rejection of the notion that he independently has shown future persecution. That issue was not exhausted before the BIA and is not in front of us. But earlier, you agreed with Judge Barron that the sole basis for the IJ's decision was the nexus. And indeed, you started your argument before us with the only issue before this court is the nexus issue. So what is your position? OK. Yes. Well, my position is the only issue before the court is nexus because he had waived and failed to exhaust all the other issues. But in reading the immigration judge's opinion, I do feel like she frequently referenced the analysis from past persecution why she went so succinctly with the withholding claim. OK. We want to turn to the nexus issue. Yes. So we believe that substantial evidence supports the agency's determination that he did not establish that he was targeted on the basis of his family membership. When you look at the fact that his father had eight siblings and many of them remained in Guatemala, the grandmother, grandfather, the sisters remained there. It was only Benedicto who was killed in 2002. And he was killed because he had a shop and he refused one day to pay the extortion amount. And so that's why he was killed in 2002. What's the significance of the statement that reportedly was made that, you know, another family member will pay if you don't pay up? So that was on page 124, 125 of the record when he was asked, in your affidavit on page 124, you say that part of the reason the gang threatened you over the phone was to try to have you join the gang. That's correct? And he says, yes, that's correct. And then she questions him further and she says, when they called you to make the threats, and this is just on the very next page, like a few lines down, did they make any specific reference to your father or to your uncles? And he says, yes. And he says that they had to pay money if not the next one was going to be someone from the family. So it was in the context of them calling him, threatening him, asking him to join the gang or pay money. But I guess I don't understand. That would seem to hurt you, unless I'm misunderstanding. Because isn't the thrust of that argument that the reason they're getting him to join the gang, the reason they want him to do it, is because of his tie to these other family members? Isn't that the import of what he's saying? They did not bother him from 2002. OK, but I'm just focused on this particular statement. He's reporting that he's told, and there's no statement that he's not credible in so saying, is there? No, there's no statement that he's not credible. So isn't he reporting that he's being told that they want him to join the gang and the reason they want him is because of his tie to the family?  But you have to look at the whole family. You have to look at the fact that out of the nine siblings, seven remain behind in Guatemala from Benedicto's siblings. Benedicto died and Valentin and Jose left. But everybody else stayed behind. And if you look at the children of these people, so Valentin testified that his daughter left because she feared that the gang was violating young women. So that's so that was the reason she left. Valentin wasn't threatened. But I still don't see what the significance of that is given this statement. Yes, he says that they made a specific reference to his father or uncles. He just says yes, when he was called. He doesn't like elaborate or give any other further information. But if you also look at the fact that he did not pay the money, he left and nobody was harmed. His family is still there. Nobody was harmed. So that's why you have to look at the whole family. You have to look at the sisters, the grandfather, the other uncles who remained in Guatemala unharmed from 2002 until today. Counsel, Mr. Olin addresses his argument on the fact that in explaining her decision, the immigration judge says, well, his basic answer for why they threatened him was about his refusal to join the gang. And Mr. Olin said the immigration judge ignores the next statement. Well, did they refer to the family? And the answer is yes. As you point out, there is no explanation of what that reference was. But Mr. Olin is saying, so this is an error of fact. That's one way of reading it. Another way of reading it is even if Mr. Olin were correct that there was a reference to family members, that does not make the immigration judge's statement incorrect that the threats were tied primarily to his refusal to join the gang. That's the way I understood the response to Mr. Olin's factual argument. And then you throw in all of the other stuff that supports that idea. And at the bottom line, they were looking for money. That's what they wanted. They weren't after family members. They were after people who had money. And that's what Mr. Conte Lopez testified to during his hearing. They were looking for people who had money. They didn't bother the family members. But I thought it was, tell me what's wrong about this. He's not denying that they wanted money. I thought his contention is they wanted my money because of my family tie as opposed to someone else's money. But if you just like look at the history, you know, there was an incident in 2002. There was an incident in 2014 when Juan Calaveras was killed. He was going out shopping. And they came up to him. They wanted some money. And he refused. And that's why he was killed. He said that they demanded his money and he wouldn't let them have it. So these are like gang violence and indiscriminate crime, opportunistic. Well, that's why this one statement is so significant to me, which is that it's a statement by him, I thought, where he's saying that part of the motivation that's leading them to go after him for money has to do with his ties to these other family members that aren't paying up. What? They haven't gone after anybody else. So how can that be family as a particular social group when they're not bothering? Well, they don't have to go after the whole family in order to be choosing him because he's a family member, do they? Well, they're not choosing him because he's a family member. They're asking him for money. They're not saying, I want to just kill you. I want money. And if you don't give me money, somebody will die. I thought, well, just last point on this. I thought we had said a central, it just has to be a central reason, has to be family status, not the sole reason. So that you can have a dual motive, which is I want money, but I want your money because of your tie to them. Is that wrong? He did not show that he was targeted or bothered any time between 2002 and until 2014. Thank you. Thank you. Anything further from Judge Lynch or Judge Helpe? Thank you, Attorney Pratt. At this time, Attorney Olin has a two-minute rebuttal. Please introduce yourself back on the record. Thank you, Randy Olin for Mr. Conte. This is a mixed motive case. They wanted him to join the gang. This appeal does not proceed on that basis at all. The basis is he is subject to being killed or harmed because he is a member of the Conte family. They have a history of harming the family. They have what the IJ said were credible threats that he would be killed and that is why he is based on his family membership. The gang issue is a distraction. No one is going forward on the gang issue. With respect to my sister's arguments that no one else has been harmed and no other family members have yet been harmed, that is not quite true. In 2013, his cousin was run over by members of the Mara 18 and his wife was kidnapped. But the best answer I have for that is something that you wrote, Judge Barron, in the Ruiz Varela case in which you said, nor do I see a basis for construing the nexus requirement to embrace the troubling notion that the sins of the father may be visited upon the son so long as they are not visited on his relatives. In a quote to the Cordova case which I have quoted in my brief, as you've said, you don't have to kill all the family members for him to be in fear of harm and persecution. I could take a half an hour to try to explain what the government's case rests upon. They have taken a few sentences, questions that the DHS attorney said and they have weaponized it and are trying to say that he has been subjected to extortion. The reason they do that is obvious. If it's extortion, then he's just a victim of criminal activity. If it's extortion of his family members based on family membership, then that creates the nexus element for him. Thank you. Thank you. That concludes argument in today's case.